## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

FREDERICK EUGENE SMITH, #55535                                      PLAINTIFF

V.                                          CIVIL ACTION NO.: 2:19-CV-117-MTP

BILLY MCGEE and ADAM BRENNER                                       DEFENDANTS

### OPINION AND ORDER

THIS MATTER is before the Court on the Motion for Summary Judgment [52] filed by

Defendant Adam Brenner, the Motion for Summary Judgment [55] filed by Defendant Sheriff

Billy McGee, and the Motion for Hearing [61] filed by Plaintiff. Having considered the parties'

submissions, the record, and the applicable law, the Court finds that the Motion for Hearing [61]

should be denied, the Motions for Summary Judgment [52] [55] should be granted, and this

action should be dismissed with prejudice.

### PROCEDURAL HISTORY

On August 14, 2019, Plaintiff Frederick Eugene Smith, proceeding *pro se* and *in forma*

*pauperis*, filed his complaint pursuant to 42 U.S.C. § 1983. The allegations in Plaintiff's

complaint occurred while he was incarcerated as a pretrial detainee and then as a post-conviction

inmate[1] at the Forrest County Jail ("FCJ"). In his complaint and as clarified in his testimony at

the *Spears*[2] hearing, Plaintiff asserts claims against Nurse Adam Brenner and Sheriff Billy

McGee for denial of adequate medical care.

Plaintiff alleges that during his incarceration at FCJ, he filed multiple sick calls and

complained on multiple occasions to Defendant Adam Brenner about cataracts in his eyes

---

[1] Plaintiff is no longer incarcerated.

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

accompanied by blurred vision and headaches. According to Plaintiff, Defendant Brenner failed to arrange for cataract surgery[3] and failed to provide him pain medications for his headaches. Plaintiff also alleges that a nurse at FCJ informed him that jail officials were delaying his surgery as a cost-saving measure, knowing that Plaintiff would be transferred to Mississippi Department of Corrections ("MDOC") custody. Plaintiff asserts a claim against Defendant Sheriff Billy McGee in his official capacity based on the allegation that the jail had a policy or practice of not arranging for surgeries as a cost-saving measure. As relief, Plaintiff seeks $100,000 in compensatory damages.

On March 11, 2021, Defendants Brenner and McGee filed Motions for Summary Judgment [52] [55].  On March 22, 2021, Plaintiff filed a Response [60] and a Motion for Hearing [61].

**STANDARD FOR SUMMARY JUDGMENT**

This Court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana*, 757 F.2d 698, 708 (5th Cir.1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly

---

[3] Plaintiff admitted that he does not know whether Defendant Brenner is responsible for arranging surgery for inmates.

deprived of a trial of disputed factual issues." *Id*. at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir.1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96–97 (5th Cir.1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir.1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994).

## ANALYSIS

Plaintiff's allegations amount to claims against Defendants for violations of the Fourteenth Amendment while he was a pretrial detainee and for violations of the Eighth Amendment once he became a post-conviction inmate. The Fifth Circuit Court of Appeals has recognized that there is no significant distinction between pretrial detainees and convicted inmates concerning needs such as medical care. *See Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001) (citing *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). Thus, a plaintiff seeking to recover for a denial of adequate medical care must establish deliberate indifference to serious medical needs. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference "is an extremely high standard to meet." *Golbert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Crim. Just., Institutional Div.*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). "The legal conclusion of 'deliberate indifference' ... must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985). To show deliberate indifference, Plaintiff must submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (quoting *Johnson*, 759 F.2d at 1238).

Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). "[D]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977). Further, "[d]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff must show that the delay caused a substantial harm, and that the prison officials knew of such risk for substantial harm and deliberately acted indifferently to the medical needs of the prisoner. *Id*.

In support of their Motions for Summary Judgment [52] [55], Defendants submitted a transcript of the *Spears* hearing, Plaintiff's medical records, affidavits from Nurse Brenner and Sheriff McGee, and excerpts from the FCJ inmate handbook. The record demonstrates that

4

during his time at FCJ, Plaintiff received treatment from medical staff at FCJ and from outside providers for various conditions, including back pain[4], hypertension[5], insomnia[6], a fainting episode[7], and tooth pain[8].

While Plaintiff was treated for multiple medical issues, his allegations in this action involve medical treatment for his eyes. According to the record, Plaintiff was first diagnosed with growths (or pterygia) in the corner of both eyes more than six (6) years before his subject incarceration at FCJ. *See* [63-1] at 3. MDOC records from a prior incarceration show that in May of 2012, an outside vision-care provider evaluated Plaintiff, diagnosed him with pterygia in both eyes, but did not believe an excision procedure was necessary at that time. *Id*.

Plaintiff testified that, between this diagnosis in 2012 and his subject incarceration at FCJ, he "forgot about" the problems with his eyes. *See* [52-2] at 40. In February 2019, while incarcerated at FCJ, a nurse practitioner was evaluating Plaintiff for his hypertension when she independently noted the pterygia in Plaintiff's eyes. *See* [63] at 16. Plaintiff was referred to an outside optometrist where he was seen the next month. *See* [63] at 45, 46. The optometrist noted that Plaintiff's pterygia were not interfering with his vision but that the condition did present a risk for squamous cell cancer. *Id*. Plaintiff was then referred to Hattiesburg Clinic for "biopsy/removal" of the pterygia. *Id*. However, the office communicated that the referred doctor "does not see inmates." *See* [63] at 21.

Nurse Brenner was notified of this, and on May 2, 2019, he obtained orders from the FCJ nurse practitioner to arrange for Plaintiff to be evaluated at the Southern Eye Center. *Id*. Nurse

---

[4] *See* [63-1] at 5; *see also* [63] at 40.
[5] *See* [59] at 4, 25, 40.
[6] *See* [59] at 3, 34.
[7] *See* [59] at 2, 4.
[8] *See* [63] at 18.

Brenner relayed these orders to Nurse Ruby Bunkheila who was responsible for scheduling inmates to see outside medical providers. *See* [63] at 2. That same day, Nurse Bunkheila called the Southern Eye Center and arranged for Smith to be evaluated by Dr. Cameron Griffith on July 30, 2019, which was the first available appointment time. *See* [63] at 26.

Plaintiff's appointment at Southern Eye Center took place as scheduled on July 30, 2019, and Plaintiff was noted to have a pterygium in his right eye, an elevated pterygium in his left eye, and combined forms of age-related cataracts in both eyes. *See* [63] at 63-69. Dr. Griffith planned for Plaintiff to proceed with scheduling eye surgery with a conjunctive graft. *Id*. Plaintiff testified that Dr. Griffith initially intended to schedule the surgery two weeks out, but Plaintiff communicated that he had recently received a criminal sentencing and would soon be transferred to Central Mississippi Correctional Facility ("CMCF"). *See* [52-2] at 16. According to Plaintiff, Dr. Griffith said: "Just explain to them when you get to C.M.C.F. and we'll take care of it." *See* [52-2] at 16-17.

Within two weeks, Plaintiff was released from FCJ into the custody of MDOC. *See* [63] at 68. Nurse Bunkheila called Southern Eye Center and notified the staff of Plaintiff's change in custody. *Id*. Upon his transfer to MDOC custody, Plaintiff was taken to CMCF. In September of 2019, Smith explained to MDOC personnel about the progress with his planned surgery. *See* [63-1] at 5. Plaintiff was examined by the optometrist with MDOC, who noted that Southern Eye Care intended to perform the pterygium surgery, but that Plaintiff "is getting out in 1 mo and will have done on outside." *See* [63-1] at 9. Plaintiff did not have the surgery performed during the nine (9) months he was in MDOC custody. *Id*. Smith testified that he has not had the surgery performed or consulted with a doctor about the surgery since he has been released from incarceration. *See* [52-2] at 15-16.

Plaintiff also testified that his vision problems were causing him to have headaches, and he was unable to get Tylenol or any other relief from his headaches while at FCJ. *See* [43] at 20. However, Tylenol is available for purchase at FCJ by inmates without a prescription at the canteen. *See* [63] at 2. The nurses are only allowed to dispense Tylenol to an inmate if that inmate has been evaluated and prescribed Tylenol by a physician or nurse practitioner. *Id*. To receive non-emergency medical treatment at FCJ, inmates are required to complete a written request for medical services, i.e., a sick call slip. *See* [52-4]. Plaintiff was aware of this procedure and had complied with it on multiple occasions. *See* [52-2] at 20.

Plaintiff's medical records show that shortly after arriving at FCJ for a previous incarceration in April 2018, Plaintiff filled out a sick call slip complaining of several issues, including migraine headaches. *See* [63] at 35. He was examined and treated for all complaints, and, for the headaches, was prescribed 800mg of ibuprofen twice per day for four (4) days. *See* [63] at 40. The ibuprofen was administered as prescribed. *See* [63] at 83.

On October 15, 2018, during the subject incarceration, Plaintiff filed another sick call slip and again complained of migraines, this time asserting they were from his high blood pressure. *See* [63] at 41. The next day, Plaintiff fainted due to elevated blood pressure. *See* [63] at 13. The Nurse Practitioner at FCJ evaluated Plaintiff and referred him to the Forrest General Hospital Emergency Room, where he underwent further evaluation and treatment. *Id*. When he returned to FCJ, Plaintiff was evaluated in follow up to the sick call slip from two days prior. *See* [63] at 43. Plaintiff's blood pressure was noted as "normal this a.m.," and Plaintiff was "calm and cooperative" with "[n]o further complaints." *Id*. Smith also admitted that the medical staff "worked with [him] to get the blood pressure straight" and that "this lawsuit is not over the blood pressure; it's over the eyes." *See* [52-2] at 12. Following this incident, Plaintiff did not fill out

another sick call slip to request medical treatment for headaches or for any other issue. *See* [63] at 35-41.

In order to succeed on his claims, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs. *See Davidson*, 91 Fed. App'x at 964. Plaintiff failed to make this showing. Plaintiff argues that Nurse Brenner provided him with constitutionally deficient medical care. The evidence, however, does not demonstrate that Plaintiff received inadequate medical care or that Defendant's actions or inactions prevented Plaintiff from receiving adequate medical care.

To the contrary, the record demonstrates that medical professionals at FCJ and CMCF assessed Plaintiff's conditions, consistently monitored and treated his conditions, scheduled multiple appointments for him with outside medical professionals, provided him multiple medications, adjusted his medications when necessary, and transported him to a hospital during a medical emergency. The record establishes that Defendant Brenner was not deliberately indifferent to Plaintiff's serious medical needs. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (holding that "[m]edical records of sick calls, examinations, diagnoses, and medication may rebut an inmates' allegations of deliberate indifference"); s*ee also Norton*, 122 F.3d at 292 ("Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.").

Plaintiff's claim against Sheriff McGee alleging his medical care was delayed due to a cost-saving policy also fails. "For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citing *Kentucky v. Graham*, 105 S.Ct. at 3105; *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 876, 83 L.Ed.2d 464 (1985)). The Supreme Court

has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). To establish liability against the County, Plaintiff must demonstrate (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. *Rivera v. Houston Independent School Dist.*, 349 F.3d at 244, 247 (5th Cir. 2003).

The record shows that Plaintiff's medical care was not delayed. He was promptly sent to an eye specialist following the nurse practitioner's note of his eye issues. *See* [63] at 16-17. On March 15, 2019, Plaintiff was examined by the optometrist and referred to another specialist whose office informed FCJ that they do not treat inmates. *See* [63] at 19-21. Consequently, Plaintiff was referred to Southern Eye Center, where Plaintiff was given the first available appointment on July 30, 2019. The record demonstrates that Plaintiff was provided prompt medical care. *Id*. Moreover, Plaintiff has not presented any evidence showing substantial harm occurred from the alleged delay in treatment.  Plaintiff was released from prison in March of 2020, and he has not seen any healthcare provider concerning his eyes since that time.

Plaintiff has not shown that Defendant McGee implemented an unconstitutional policy that caused him an injury. Plaintiff has failed to present any evidence establishing that any action or inaction by Defendants Brenner and Sheriff McGee violated his constitutional rights. Therefore, Defendants are entitled to judgment as a matter of law.

Plaintiff filed a Motion for Hearing [61], seeking a hearing on his case so that his case may proceed. According to Plaintiff, he wishes for this civil action to be completed so that he can return to Hattiesburg, Mississippi, and find work.  As the current record establishes that

Defendants are entitled to judgment as a matter of law, the Court will deny Plaintiff's Motion for

Hearing [61].

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motions for Summary Judgment [52] [55] are GRANTED;

2. Plaintiff's Motion for Hearing [61] is DENIED;

3. This action is DISMISSED with prejudice; and

4. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 9th day of July 2021.


s/ Michael T. Parker
UNITED STATES MAGISTRATE JUDGE